# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY W. SCHILLACI, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-12-561 |
| v. | (JUDGE CAPUTO) |
| CARGILL MEAT SOLUTIONS, | |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court is Defendant Cargill Meat Solutions' ("Cargill") Partial Motion to Dismiss Plaintiff Timothy W. Schillaci's ("Schillaci") Amended Complaint. (Doc. 18.) Schillaci claims that Cargill, his former employer, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951, *et seq.*, and wrongfully discharged him in violation of Pennsylvania common law. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Cargill has moved to dismiss Schillaci's ADA failure to accommodate claim, the PHRA failure to accommodate claim, and the state-law wrongful discharge claim. Because the failure to accommodate claims lack sufficient factual allegations to state claims upon which relief can be granted, and because the PHRA forecloses the wrongful discharge claim based on disability discrimination, the partial motion to dismiss will be granted.

## I. Background

The facts as alleged in the Amended Complaint are as follows:

Schillaci was hired by Cargill in May 2006 to work in the Dehider Area of the Dressing Floor. (*Am. Compl.*, ¶ 7.) Schillaci worked in this position until October 2006, at which time he left his employment with Cargill due to the birth of his child. (*Id*. at ¶ 8.)

Cargill subsequently rehired Schillaci in April 2008 to work in the Offal Area of the Dressing Floor. (*Id*. at ¶¶ 8-9.) While working in the Offal Area, Schillaci injured his left wrist, and, as a result, he was reassigned to another position. (*Id*. at ¶¶ 10-11.) At this time,

management's attitude towards Schillaci changed, as he started to receive write-ups for not wearing the proper protective equipment, for injuring his thumb when he was not on company time, and for horseplay. (*Id*. at ¶¶ 12-20.) Ultimately, Schillaci was terminated. (*Id*. at ¶ 21.)

Cargill rehired Schillaci in November 2009. (*Id*. at ¶ 24.) When he was rehired, Schillaci worked in the Head Line Area of the Dressing Floor doing tongue and cheek wash. (*Id*. at ¶ 27.) Upon being rehired, Schillaci was subject to immediate harassment. (*Id*. at ¶ 25.) For example, Schillaci was automatically placed on restriction, as Cargill said he "had trigger finger which was untrue." (*Id*. at ¶ 28.) Schillaci was upset that he was not given a knife job, and he felt degraded by the decision. (*Id*. at ¶ 30.) He remained in this position for four months, during which he expressed his feelings of low esteem. (*Id*. at ¶ 31.) Eventually, Schillaci visited Dr. Web, and Dr. Web lifted Schillaci's work restrictions. (*Id*. at ¶ 32.)

Once the restrictions were lifted, Schillaci bid on a knife position in the Blood Pit Area of the Dressing Floor. (*Id*. at ¶ 33.) Schillaci was assigned to pull snouts. (*Id*. at ¶ 34.) However, the two employees tasked with his training, Mike Crawn and Chris Clark, constantly harassed him and refused to train him. (*Id*. at ¶¶ 35-37.) Other employees also insulted Schillaci and made it difficult for him to perform his job. (*Id*. at ¶¶ 40-46.)

Thereafter, Schillaci's supervisor, Bob Vanderpool, reassigned him to work on bovine vac and tail clip. (*Id*. at ¶ 47.) When Schillaci's wife asked Vanderpool why her husband was on tail clip, he responded that "Tim is slow [and] I know he has ADD, or something like that, but he has to focus." (*Id*. at ¶¶ 48-49.)

Due to how he was being treated at work, Schillaci began feeling suicidal. (*Id*. at ¶ 50.) Schillaci was diagnosed with major depressive disorder, and he was placed on prozac, wellbutrin, buspar, klonopin, and risperdal. (*Id*. at ¶¶ 51-52.)

After Schillaci came back to work, the harassment continued, as other employees called him names and verbally abused him. (*Id*. at ¶¶ 53-61.) Thereafter, Schillaci was given a job pulling bags and skinning legs, but he never received any training. (*Id*. at ¶¶ 62-63.) Rather, he had to train himself. (*Id*. at ¶ 63.) One day, Schillaci was removed from the line due to an allegation that he was doing drugs. He was given a drug test, and the results came back negative. (*Id*. at ¶¶ 64-65.) And, when Schillaci and his wife complained to Vanderpool about the harassment, Vanderpool responded that Schillaci needed to set higher goals and standards and to focus on his job responsibilities. (*Id*. at ¶¶ 66-68.)

In August 2010, Schillaci's depression worsened, and he was admitted to the hospital. (*Id*. at ¶ 69.) Schillaci was hospitalized for two weeks. (*Id*. at ¶ 70.)

Upon his return to work, the harassment resumed, as other employees yelled at Schillaci and threw debris at him. (*Id*. at ¶¶ 73-76.) Nevertheless, these employees were not disciplined. (*Id*. at ¶ 76.) Conversely, Schillaci was ultimately terminated for allegedly harassing a co-worker, even though Cargill never conducted an investigation of the accusation. (*Id*. at ¶¶ 77-78.) And, Schillaci never received a warning about harassment prior to his termination. (*Id*. at ¶ 81.) Schillaci asserts that the adverse employment action was taken against him due to his inability to concentrate based on his depression and attention deficit disorder ("ADD"). (*Id*. at ¶¶ 84-85.)

As a result of the foregoing events, Schillaci commenced this action against Cargill alleging: (1) violation of the ADA (Count I); (2) retaliation under the Age Discrimination Act and the ADA (Count II); hostile work environment under the ADA (Count III); (4) violation of the PHRA (Count IV); and wrongful discharge (Count V). (Doc. 1.) After Cargill moved to dismiss the Complaint, Schillaci filed the Amended Complaint in an effort to cure the defects identified by Cargill. (*Am. Compl.*) Thereafter, Cargill filed a partial motion to dismiss seeking dismissal of the failure to accommodate claims under the ADA and the

3

PHRA, the age discrimination claim, and the wrongful discharge claim. (Doc. 18.) Now, as the motion to dismiss has been fully briefed, it is ripe for disposition.

## II. Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, - - - F.3d - - - , 2012 WL 4335958, at *8 (3d Cir.

Sept. 24, 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

B.  **Cargill's Motion to Dismiss**

As noted, Cargill seeks dismissal of the failure to accommodate claims under the ADA and the PHRA, the age discrimination claim, and the wrongful discharge claim.

1.  **Failure to Accommodate[1]**

To state a failure to accommodate claim under the ADA, a plaintiff must allege: "'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination . . . [which] in this context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities.'" *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186–87 (3d Cir. 2009) (quoting *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004)). But, "[a]n employer's duty to provide a reasonable accommodation is not triggered until the employee puts the employer on notice that an accommodation is necessary." *Conneen v. MBNA Am. Bank, N.A.*, 182 F. Supp. 2d 370, 378-79 (D. Del. 2002) (citing *Jovanovic v. In-Sink-Erator*, 201 F.3d 894, 899 (7th Cir. 2000)). Stated differently, " when accommodations are at issue in an ADA claim, the burden is on the employee or a representative to inform the employer of both the disability and desire for an accommodation." *Drozdowski v. Northland Lincoln Mercury*, 321 F. App'x 181, 185 (3d Cir. 2009) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) ("What matters under the ADA are not formalisms about the manner of the request, but whether

---

[1]   Because "the same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA," *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500 n.3 (3d Cir. 2010) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)), the failure to accommodate analysis encompasses the ADA claim (Count I) and the PHRA claim (Count IV).

the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.")).

In its motion to dismiss, Cargill argues that even assuming an actual disability has been adequately pled, Schillaci fails to allege that he requested an accommodation for his disability or that a request for an accommodation was denied. Thus, Cargill contends that Schillaci fails to state a claim upon which relief can be granted. I agree.

Here, the Amended Complaint fails to set forth "sufficient factual matter" to show that the reasonable accommodation claims are facially plausible. *Fowler*, 578 F.3d at 210. Indeed, while Schillaci asserts that he "was fully qualified for other positions and even though he requested a transfer and an accommodation, he was not given one," and he "requested an accommodation, but was denied," (*Am. Compl.*, ¶¶ 88, 105), the Amended Complaint is devoid of any details of the accommodation requested. For example, Schillaci does not allege when he requested a transfer, what position he requested a transfer to, whom he notified of his request, and/or what specific accommodation he requested. In fact, the only requested transfer specifically identified in the Amended Complaint, Schillaci's bid for a knife job in the Blood Pit Area on the Dressing Floor, (*Id*. at ¶ 33), appears to have been granted, as he was subsequently assigned to pull snouts. (*Id*. at ¶ 34.) As Schillaci has not alleged that Cargill knew of his desire for an accommodation, *see, e.g., Lewis v. Pennsylvania*, No. 06-1162, 2007 WL 1247076, at *5 (W.D. Pa. Apr. 6, 2007) (failure to accommodate claim should be dismissed where plaintiff failed to allege "that he needed, requested, or the Defendants should have known he sought accommodation"), and the Amended Complaint fails to sufficiently detail the alleged requested accommodation, *see, e.g., LaGatta v. Pa. Cyber Charter Sch.*, 726 F. Supp. 2d 578, 588-89 (W.D. Pa. 2010) (the defendant "cannot be held liable for failing to reasonably provide an accommodation that

was never requested"); *Parelli v. Bell Atlantic-Pennsylvania*, No. 98-3392, 1999 WL 1060706, at *3 (E.D. Pa. Nov. 22, 1999) (defendant can only be held liable for failure to accommodate under the ADA and PHRA if it denied a request for accommodation), the failure to accommodate claims will be dismissed.

### 2. Age Discrimination

Count II of the Amended Complaint is titled "Retaliation Under the Age Discrimination and the Americans' [sic] with Disabilities Act." (*Am. Compl.*) In its motion to dismiss, Cargill notes that this is the sole reference to age in the Amended Complaint, and that any claim for age discrimination should be dismissed as a result. Schillaci's opposition brief confirms that he "is not pursuing age discrimination in this matter." (Doc. 24.) The age discrimination claim in Count II will therefore be dismissed.

### 3. Wrongful Discharge

Lastly, Cargill seeks dismissal of the wrongful discharge claim on the basis that Pennsylvania does not recognize wrongful termination torts when relief for the alleged wrongful discriminatory action is provided under the PHRA. In opposition, Schillaci argues that "absent the discriminatory charges [he] would have a legitimate wrongful discharge claim." (Doc. 24.) I disagree. Because the PHRA forecloses Schillaci from pursuing a wrongful discharge claim based on disability discrimination, Count V of the Amended Complaint will be dismissed.

Pennsylvania common law provides a cause of action for wrongful discharge in violation of clear mandates of public policy. *Weaver v. Harpster*, 601 Pa. 488, 975 A.2d 555, 562–63 (2009). Wrongful discharge is an exception to the general principle that an employment relationship is terminable at will and is narrowly construed. *Weaver*, 975 A.2d at 563. Thus, the "public policy" exception has only been recognized by Pennsylvania courts in the "most limited of circumstances." *McLaughlin v. Gastrointestinal Specialists*,

Inc., 561 Pa. 307, 750 A.2d 283, 287 (2000). Furthermore, the Pennsylvania Supreme Court has determined that the "PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination." *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917, 918 (1989); *see also Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 943 (3d Cir. 2007) ("The Supreme Court of Pennsylvania has held that, because a PHRA claim is available in discrimination cases, a wrongful discharge claim will not lie."). Accordingly, because the PHRA forecloses Schillaci's wrongful termination claim based on disability discrimination, the motion to dismiss Count V will be granted. *See O'Neil v. Montgomery Cnty. Cmty. Coll.*, No. 05-5169, 2006 WL 3718013, at *2 (E.D. Pa. Dec. 13, 2006) (dismissing wrongful discharge claim based on disability).

**C.     Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure permits a court to grant a party leave to amend its pleadings. *See* Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *See id*. "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.2004)). At this time, it is not apparent that amendment of the failure to accommodate claims would be futile. As such, Schillaci will be afforded twenty-one days to amend his failure to accommodate claims. However, because the wrongful discharge claim is foreclosed by the PHRA, amendment would be futile. The wrongful discharge claim will therefore be dismissed with prejudice.

## III. Conclusion

For the above stated reasons, Cargill's partial motion to dismiss will be granted, the wrongful discharge and age discrimination claims will be dismissed with prejudice, and the

failure to accommodate claims will be dismissed without prejudice.

An appropriate order follows.

December 17, 2012  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge