**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TIMOTHY W. SCHILLACI,** : | |
| **Plaintiff** : | |
| : | **CIVIL ACTION NO. 3:12-0561** |
| v. : | |
| : | **(MANNION, J.)** |
| **CARGILL MEAT SOLUTIONS CORP.,** : | |
| : | |
| **Defendant** : | |
| : | |

# **M E M O R A N D U M**

Pending before the court is the defendant's unopposed motion for summary judgment. (Doc. 40). Based upon the court's review of the motion and the related materials, the defendant's motion for summary judgment will be granted.

## **I.   PROCEDURAL BACKGROUND**

By way of relevant background, the plaintiff filed the instant action on March 28, 2012. (Doc. 1). On July 23, 2012, the defendant filed a motion to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted. (Doc. 9). On August 8, 2012, the plaintiff's attorney made the first of many motions for an extension of time to respond, (Doc. 13), which was granted by order dated August 10, 2012, (Doc. 14). On September 11, 2012, the plaintiff's attorney made a second motion for an extension of time to respond to the defendant's motion to dismiss. (Doc. 16). On the same day,

the plaintiff filed an amended complaint. (Doc. 17).

On September 24, 2012, the defendant filed a partial motion to dismiss the plaintiff's amended complaint. (Doc. 18)[1]. On October 23, 2012, when the plaintiff failed to file a brief in opposition to the defendant's partial motion to dismiss his amended complaint, the defendant filed a praecipe to consider the plaintiff's lack of contest as consent to the defendant's motion to partially dismiss the plaintiff's amended complaint. (Doc. 20). By order dated October 24, 2012, the court directed the plaintiff's attorney to file an opposing brief or risk having the defendant's motion granted as unopposed without a merits analysis. On November 6, 2012, the plaintiff's attorney filed another motion for extension of time. (Doc. 22). The court granted the motion and allowed the plaintiff until November 20, 2012, to file his brief in opposition. (Doc. 23). On November 20, 2012, the plaintiff's attorney filed his brief in opposition to the partial motion to dismiss. (Doc. 24).

By memorandum and order dated December 17, 2012, the defendant's partial motion to dismiss the plaintiff's amended complaint was granted with prejudice as to the plaintiff's claims for wrongful discharge and age discrimination. (Doc. 27). The plaintiff was given twenty-one days to file a

---

[1]In light of this filing, the court deemed moot the defendant's motion to dismiss the plaintiff's original complaint, as well as the plaintiff's second motion for extension of time to respond to that motion. (See Docket Annotation dated October 10, 2012).

second amended complaint with regard to his failure to accommodate claim. In the order, the court specifically indicated that failure to file the second amended complaint in a timely manner would result in the failure to accommodate claim also being dismissed with prejudice. (Doc. 27). The plaintiff's attorney did not timely file the second amended complaint, so the failure to accommodate claim was dismissed with prejudice by order dated January 29, 2013. (Doc. 31)[2].

On November 4, 2013, the defendant filed the instant motion for summary judgment, (Doc. 40), along with a supporting brief, (Doc. 41), and a statement of material facts with exhibits, (Doc. 42). On November 26, 2013, the plaintiff's attorney filed a motion for an extension of time to respond to the defendant's motion for summary judgment. (Doc. 43). The extension was granted by order dated December 2, 2013. (Doc. 44). On January 3, 2014, the defendant filed its first praecipe to deem the motion for summary judgment unopposed. (Doc. 45). The plaintiff responded to the defendant's praecipe by requesting yet another extension of time. (Doc. 46). The plaintiff's request was granted and he was given until March 24, 2014, to file his response to the defendant's motion. (Doc. 47). On March 27, 2014, the defendant filed a

---

[2]Prior to January 13, 2013, this matter was assigned to the Honorable A. Richard Caputo. By verbal order dated January 15, 2013, the case was transferred to the undersigned. (See Docket Annotation dated January 15, 2013).

second praecipe to deem the motion for summary judgment unopposed. (Doc. 48). The plaintiff has yet to respond to the defendant's second praecipe and his counsel has had ample opportunity to respond to the defendant's motion, but has not. Therefore, pursuant to Local Rule 7.6[3], this court will consider the defendant's motion as unopposed.

## II. FACTUAL BACKGROUND[4]

The defendant initially hired the plaintiff in May of 2006, as a "belly splitter"[5] in the dehider area. (Doc. 42, Ex. A, p. 16). When hired, the plaintiff indicated that he did not have any kind of disability that would affect his ability

---

[3]Pursuant to Local Rule 7.6, a party opposing a motion for summary judgment has twenty-one days to file his/her opposing brief and responsive statement of facts, together with any relevant documentation. If these materials are not filed in a timely manner, the party shall be deemed not to oppose the motion.

[4]This is an unopposed motion for summary judgment, as such "the court will accept as true all material facts set forth by the moving party with appropriate record support. If those facts entitle the moving party to judgment as a matter of law, summary judgment will be granted." Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990); Local Rule 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."). Defendant's facts as adopted by the court are found in Doc. 42.

[5]A belly splitter would be located on a platform and use a knife and hook to pull the skin back on the cow, make a cut at the top, and split the belly in order for the next person, who was using an air knife, to take the cow hide further off. (Doc. 42, Ex. A, p. 16).

to work. (Id. at pp. 13-15; Ex. B). In October of 2006, the plaintiff resigned for personal reasons involving the birth of his son. (Id. at p. 21). The plaintiff testified at his deposition that he enjoyed his work at Cargill and was treated fairly during this period of time. (Id. at pp. 16, 21).

On April 8, 2008, Cargill rehired the plaintiff for a second term of employment in the "offal area" where the guts of the cattle would be separated. (Id. at pp. 22-23). Again, the plaintiff indicated on an employment form that he did not have any disability that would impair his ability to perform his duties. (Id. at p. 25-29; Ex. C). The plaintiff did mention, however, that he had received treatment for some minor emotional problems during the preceding year due to the death of his son. (Id. at p. 26; Ex. C).

On January 28, 2009, the plaintiff engaged in gross misconduct when he slapped a co-worker with purple ink on the back, destroying a pair of coveralls. (Id. at p. 45; Ex. D). He was suspended for three days and given a "final" written warning, which he signed and acknowledged. (Id. at p. 46; Ex. D). Within a few days of his return from suspension, the plaintiff committed a safety infraction when he shot a rubber band at a co-worker. (Id. at pp. 45-48; Ex. E). The plaintiff was subsequently discharged and he did not contest his discharge. (Doc. 42, Ex. A, pp. 48-50; Ex. F).

On November 9, 2009, Cargill rehired Schillaci for his third and final term of employment. (Id. at p. 61). Again, the plaintiff indicated that he did not have any disability that would affect his ability to work. (Id. at pp. 61-62; Ex.

5

G). Shortly after the plaintiff began his third term of employment, he was diagnosed with trigger finger[6] and he was placed on restricted light duty doing "tongue and cheek washing." (Id. at pp. 69-70). On February 22, 2010, the plaintiff's restrictions were lifted and, as per his request, he returned to more rigorous work in the blood pit, pulling the snouts off of cattle heads. (Id. at pp. 73, 76).

It was during this third term of employment that the plaintiff testified that the incidents occurred which are the basis of the instant action. The plaintiff testified at his deposition that, while his immediate supervisor, Bob Vanderpool, generally treated him fairly, (Id. at pp. 79-80), Mr. Vanderpool told the plaintiff's wife at the time that the plaintiff was "slow, . . . has ADHD, or something like that, and . . . needs to focus more." (Id. at pp. 125, 185-86). The plaintiff testified that another supervisor, Tracy Woodruff, would tell workers that the plaintiff was "stupid and dumb," and would let the other employees yell at him. (Id. at pp. 78, 127). In addition, the plaintiff testified that a third-party USDA inspector, Frank Huffman, asked of him while he was on light duty "isn't that a girl's job?", (Id. at p. 71), and that one of the trainers, Pete Hay, told new hires that he was a "troublemaker" and to "watch out for him." (Id. at p. 217). With respect to co-workers, the plaintiff testified that they

---

[6]Trigger finger is a state in which flexion or extension of a digit is arrested temporarily but finally completed with a jerk. Taber's Cyclopedic Medical Dictionary at 2149 (19th ed. 2001).

6

insulted him and otherwise made his job difficult, (Id. at pp. 75, 103-04, 124-25, 226-27), would sing in a "sarcastic way", (Id. at p. 195), would "shoot rubber bands and shit balls at his head," (Id. at pp. 204-05), and would imply that he was difficult to work with, (Id. at p. 236-37). The plaintiff's final allegation of mistreatment is that the safety captain would always stare at him. (Id. at p. 131).

The plaintiff generally alleges that he complained to his supervisors about these incidents, but could not recall the specifics of his complaints. (Id. at pp. 103-04, 199-200). He admits, however, that he did not claim that he was being harassed as a result of any alleged disability. (Id. at p. 281). In fact, when he submitted his only written complaint to the Human Resources Department, it merely indicated that he "had been harassed on the job by Josh Jones." The plaintiff made no mention of any alleged disability. (Id. at 101-02; Ex. H).

During his third term of employment, on September 13, 2010, the plaintiff was written up for threatening a co-worker. (Id. at pp. 111-13; Ex. I). Following an incident where the plaintiff threw his knife against a wall, the plaintiff received another safety write-up and was suspended as of April 20, 2011. (Id. at pp. 112; Ex. J). Three witnesses corroborated the incident. (Doc. 42, Ex. K). On April 26, 2011, the plaintiff received another write-up for "verbal abuse" and "encouraging a hostile work environment." (Doc. 42, Ex. A, p. 113; Ex. L). Three days later, the plaintiff received another suspension for

harassing his co-workers. (Id. at pp. 152-54; Ex. M). On May 17, 2011, the plaintiff threw a severed tailbone and yelled at a co-worker. (Id. at pp. 117-18; Ex. N). The plaintiff admits that his behavior violated company policy subjecting him to termination, which, in fact, occurred on May 18, 2011. (Id. at pp. 122, 282-83).

On August 31, 2011, the plaintiff filed a charge of discrimination with the Pennsylvania Human Relations Commission, (Doc. 42, Ex. O), and on March 28, 2012, the plaintiff initiated the instant action wherein he alleges: (1) the defendant violated the Americans with Disabilities Act, ("ADA"), by failing to accommodate his disability; (2) the defendant retaliated against him in violation of the ADA and Age Discrimination in Employment Act, ("ADEA"); (3) the defendant created a hostile work environment for him in violation of the ADA; (4) the defendant violated the Pennsylvania Human Relations Act, ("PHRA"), and (5) the defendant wrongfully discharged him. As previously discussed, the wrongful discharge claim and failure to accommodate claim are not longer at issue in this case as they were dismissed pursuant to a memorandum and order entered on December 17, 2012. (Doc. 26).

**III.   STANDARD OF REVIEW**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

8

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial

burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

IV.   **DISCUSSION**

   A.   **ADA Retaliation Claim**[7]

"The burden-shifting framework of McDonnell Douglas Corp. v. Green,

---

[7]The court notes that "a person's status as a 'qualified individual with a disability' is not relevant in assessing the person's claim for retaliation under the ADA." Krouse v. American Sterilizer, Co., 126 F.3d 494, 498 (3d Cir. 1997). By its terms, the ADA retaliation provision protects "any individual who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." 42 U.S.C.A. §12203(a). This differs from the ADA disability discrimination provision, 42 U.S.C.A. §12112(a), which may be invoked only by a "qualified individual with a disability." Thus, an individual who is adjudged not to be a "qualified individual with a disability" may still pursue a retaliation claim under the ADA. See Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 786 (3d Cir. 1998).

411 U.S. 792 (1973) applies to ADA retaliation claims." Williams v. Phil. Hous. Auth. Police Dept. 380 F.3d 751, 760 (3d Cir. 2004) (citing Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000)). Pursuant to this framework: (1) the plaintiff first bears the burden of establishing a *prima facie* case of retaliation; (2) the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) if the defendant meets its burden of production, the plaintiff must prove by a preponderance of the evidence that the defendant's proffered reason was pretextual. See Parker v. Verizon Pa., Inc., 309 F. App'x 551, 555 (3d Cir. 2009) (citing McDonnell Douglas, 411 U.S. at 802).

To establish a *prima facie* case of retaliation under the ADA, "a plaintiff must show: '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" Williams v. Phil. Hous. Auth. Police Dept., 380 F.3d at 759 (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002)).

As indicated above, if the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. See Krouse v. Am. Sterilizer Co., 126 F.3d at 500 (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997)). However, the "employer's burden at this stage

11

is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action].'" Id. at 500-01 (citing Woodson, 109 F.3d at 920 n.2).

If the employer satisfies its burden, to survive summary judgment in a pretext case, "the plaintiff must produce 'sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action.'" Id. at 504 (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996)). "This is ordinarily done by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)). To meet his burden, the plaintiff must "'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause' of the decision." Vierra v. Wayne Mem'l Hosp., 168 F. App'x 492, 495 (3d Cir. 2006) (quoting Fuentes, 32 F.3d at 763).

Here, the plaintiff has failed to establish a *prima facie* case of retaliation. To this extent, in order to establish a *prima facie* case of retaliation, the

plaintiff must demonstrate that he engaged in protected activity. Protected activity occurs when an employee has "opposed any act or practice made unlawful by the ADA or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." Norman v. Univ. of Pittsburgh, 2002 WL 32194730 (W.D. Pa. Sept. 17, 2002) (citing Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 786 (3d Cir. 1998); 42 U.S.C.A. §12203(a)). The uncontested facts of record in this case demonstrate that the plaintiff made general verbal complaints of mistreatment by his co-workers and, on May 13, 2011, submitted a written complaint to the Human Resources Department indicating that he "ha[d] been harassed on [the] job by Josh Jones ever since [he] ha[d] the title of pulling snouts," and asking that Mr. Jones be advised "not [to] bother [him] anymore." (Doc. 42, Ex. H). Nothing in the record supports, however, that the plaintiff's complaints were in any way related to his alleged disability. Thus, there is nothing in the record to establish that the plaintiff engaged in protected activity pursuant to the ADA.

Even if the plaintiff's complaint on May 13, 2011, could be considered protected activity, the plaintiff has presented nothing to show that his subsequent termination on May 18, 2011, was causally related to his complaint. In fact, the only conceivable causal link between the firing and the plaintiff's complaint was that the plaintiff was fired within a week of filing his complaint to Human Resources. While the proximity between the taking of a

protected action might indicate it was retaliatory, See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), "the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events," Krouse, 126 F.3d at 503. While there is certainly a degree of correlation between the two, correlation is not causation. The plaintiff has simply not carried his burden to show the requisite causal link. See Jalil, 873 F.2d at 708.

Considering the foregoing, the plaintiff has failed to establish that he engaged in protected activity or that his termination was causally related to any alleged protected activity. As such, he has failed to establish a *prima facie* case of ADA retaliation.

Further, even if the plaintiff had established his *prima facie* case, this only causes the burden to shift to the defendant to provide a non-discriminatory reason as to why the plaintiff was fired. Id. The defendant has proffered that the plaintiff was terminated for safety infractions and for violating company policy and, specifically, for the final instance of throwing a tailbone at a co-worker and yelling at him "it's about time you did something." The defendant, based on this behavior, believed that the plaintiff was harassing a co-worker in a manner that was unsafe and which violated company policy. (Doc. 42, Ex. A, pp. 117-18). Even though he contends he was joking at the time, the plaintiff admitted at his deposition that his co-worker may not have seen it that way and that his actions violated company

policy. (Id. at pp. 117-18, 282-83). The defendant has presented a legitimate non-discriminatory reason for the plaintiff's termination, and the plaintiff, for his part, has presented nothing to establish that the defendant's proffered reason for his termination is pretextual.

For all of the above reasons, the defendant's motion for summary judgment on the plaintiff's ADA retaliation claim will be granted.

### B. ADA Hostile Work Claim

Turning to the plaintiff's hostile work claim:

> [T]here are five elements necessary to establish a successful hostile work environment claim: (1) the plaintiff suffered intentional discrimination because of his membership in the protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person under the same circumstance; and, (5) the existence of *respondeat superior* liability.

Lescoe v. Pa. Dep't of Corr. – SCI Frackville, 464 F. App'x 50, 54 (3d Cir. 2012) (italics added) (citing Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999)).

Under the first element of an ADA hostile work claim, the plaintiff must be a member of a protected class. For purposes of an ADA claim, this means that the plaintiff must be disabled. Being disabled under the ADA means having "a physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment, or being

15

regarded as having such an impairment." 42 U.S.C. §12102.

A person is substantially limited in a major life activity if he/she:

"is unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

Walton v. Mental Health Ass'n, 168 F.3d 661, 665 (3d Cir. 1999) (internal quotation marks left out) (quoting 29 C.F.R. §1630.2(j)). Major life activities include, but are not limited to: "[c]aring for oneself, performing manual tasks . . . concentrating, thinking, communicating, interacting with others, and **working**." 29 C.F.R. §1630.2(i) (emphasis added).

In this case, there is no indication from the record before the court that the plaintiff was substantially limited with regard to any major life activity, especially working. In fact, the plaintiff was able to perform all of the work he was assigned. Therefore, he does not meet the first definition of disabled under the ADA. See Walton, 168 F.3d at 666.

Moreover, under the second definition, there is no record of the plaintiff having any impairment. This means that "the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. §1630.2. At no point during his three separate periods of employment with the defendant did the plaintiff ever inform the defendant of any alleged disability. While the

16

plaintiff indicated that he had some emotional health issues at the start of his second term, he stated that he had received treatment for those issues, and further, on each occasion, the plaintiff affirmatively stated that he did not have any disability that would affect his ability to work. Additionally, when asked if he required accommodation, he answered in the negative. Based upon the evidence before the court, there is no record of the plaintiff having a record of disability.

Finally, despite the plaintiff's allegation that his supervisor, Mr. Vanderpool, told the plaintiff's wife that the plaintiff was "slow, . . . has ADHD, or something like that, and . . . needs to focus more," there is no evidence in the record that the defendant ever regarded the plaintiff as disabled. In fact, the defendant employed the plaintiff on three separate occasions in some of the most demanding and difficult work available. Had the defendant perceived the plaintiff as disabled, the plaintiff would not have been employed in the areas designated by the defendant. In fact, the defendant was capable of giving less demanding work as evidenced by the plaintiff's time on restricted light duty. Furthermore, because the plaintiff never informed the defendant of his alleged disability, the defendant would have had no reason to believe he was disabled.

Because the plaintiff has not established the first element of his ADA hostile work claim, namely, that he is a member of the protected class, the remaining elements need not be discussed herein and summary judgment will

be entered in favor of the defendant on this claim.

### C. The PHRA

With respect to the plaintiff's PHRA claim, the Third Circuit has held that the ADA and PHRA are "substantially similar" and "that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Fogleman v. Mercy Hosp., 283 F.3d 561, 567 (3d Cir. 2002). There is nothing to indicate that this is one of those specific circumstances that require different interpretation. That means that in order for the plaintiff to be able to recover under these statutes he must be a member of the protected class. As has already been discussed, the facts before the court do not establish that the plaintiff was disabled under the ADA and by extension the PHRA. Furthermore, the statutes are only a burden shifting mechanism. See Id. On the facts before the court, the defendant has provided that there was a non-discriminatory reason for the plaintiff's termination, namely, the plaintiff's record of safety breaches and violations of company policy. Under the uncontested facts, the plaintiff's termination was neither in violation of the ADA nor the PHRA. See Jalil v. Avdel Corp., supra.

## V.     CONCLUSION

For the reasons discussed above, the defendant's motion for summary judgment, (Doc. 40), will be granted. A separate order shall issue.


                                                                s/ *Malachy E. Mannion*
                                                                **MALACHY E. MANNION**
                                                                **United States District Judge**

**Date:  September 15, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-0561-01.wpd